THOMAS PLEASANTS,
Thomas Shore, David Ross, William Anderson, and others, associated by the firm Pleasants, Shore, and company, having purchased lands, which bad es-cheated from Lewis Burwell Martin, and Samuel Martin, David Ross, who owned one fourth part, in february, 1780, bought the shares of all his companions, agreeing to pay so much crop tobacco, inspected in 1779 or 1780, at the upper warehouses on James and York rivers, as William Cabell, George Carrington, Roger Thompson, John Coles, and Nicholas Lewis, or any three of them, should adjudge to be the value of those shares, with a commission of five per centum over and above the valuation, and in case the lands should not be valued before the first day of may then next, to pay five per centum per annum interest from that day, upon any balances which might be found due on account of the purchase at a final settlement; and, for performance of these agreements, bound himself, by one obligation, in the penalty of 1600000 pounds of merchantable crop tobacco, payable to Pleasants, Shore and company, whose share was two fourth parts, and by another obligation, in the penalty of 800000 pounds of like tobacco, payable to William Anderson, owner of the remaining fourth part; and the lands were to be granted to David Ross, which was accordingly done : he also bought the companys share of the black cattle on the lands.
About the same time, Thomas Pleasants, and William Anderson, the agents for Pleasants, Shore, and company, sold 400 hogsheads of their tobacco, for twenty shillings sterling by the hundred pounds, to David Ross, Thomas Shore, and others, designated by the firm Ross, Shore, and company, who assumed on their parts, to pay so much of the money, in six weeks from *12 that time, as was equal to the debts which Pleasants, Shore and . company owed to Abel James, and Thomas Paschall, and the residue in six months fo Isaac Governeur, towards discharging a debt which they owed to him.
. David Ross made some payments to William Anderson, in may and june, 1780, procured a transfer to himself of the bond from Pleasants, Shore, and company, for payment of the debt which they owed to Thomas Paschall; and, on the second day of november, 1780, drew bills of exchange, on Walter Chambre, for more than 1200 pounds sterling, payable to Pleasants, ,Shore, and company, which Thomas Pleasants, one of their agents, acknowledged to have been received by him, and, with Paschalls transferred debt, to be a partial payment for the lands -purchased of them, by mutual agreement to be settled in tobacco at twenty shillings sterling by the hundred pounds : but the bills were not applied to the use of Pleasants, Shore, and company, and were protested.
Four of the men appointed to value the lands met for that purpose, the 18 day of april, 1781, attended by David Ross and William Anderson. :
To them,«in order to prove the low price of tobacco, William Anderson produced a certificate that it had been very lately sold ■for ten shillings by the hundred pounds weight, and observed •further, that the british enemy, then in the country, might destroy or carry away what was in the warehouses : to obviate the argument from this danger, David Ross, after urging some considerations to shew that the tobacco ought to be rated higher, proposed that the circumstance of the hostile invasion should not affect the valuation of the lands at all, and, in thatcase, declared he would consent to be restrained from making payment, unless William Anderson should demand- it, before the enemy should evacuate the countiy. this proposition William Anderson rejected, declaring that the tobacco was immediately Wanted, and giving some other reasons.
> The four referees then proceeded in the business, and stated their act on written papers, delivered to the parties, containing these words :
‘We the subscribers, being mutually and indifferently chosen by David Ross, of the one part, William Anderson, of a second, and Pleasants, Shorej and company, of a third part, to arbitrate and determine a matter of difference in dispute between them concerning the purchase of several tracts of land formerly the property of Lewis Burwell Martin, and Samuel Martin, and after viewing the lands, and taking other information for our direction, and maturely and deliberately considering the subject matter of the said dispute, do value the said land at 959205 *13 pounds of tobacco; and do find, after deducting the several payments made by the said Ross, as well to the said Anderson, as to the said Pleasants, Shore, and company, that there is a balance of 110537} pounds of tobacco due to the said Anderson, and to the said Pleasants, Shore and company, 93003} pounds of tobacco ; therefore do award, that the said Ross do pay to the said Anderson the said quantity of 110537} pounds of tobacco, and to the said Pleasants, Shore and company the said quantity of 93003} pounds of tobacco, and on payment thereof that they severally do execute full and clear discharges for the same, it is to be remembered, that, in valuing the land above mentioned, so far as relates to the quantity of low-grounds, it being uncertain, we supposed it to be four hundred acres, and valued at the rate of one thousand pounds of tobacco per acre ; and if it shall prove to be more than the quantity of real river low grounds, or less, as the case may be, that then they add or lessen to or from the price of the low ground, and of course, either add or lessen to or from the price of the high ground, that being valued at eighty five pounds of tobacco per acre, in witness, whereof we do hereunto set our hands, the 18 april, 1781. George Carrington, John Coles, Roger Thompson, Nicholas Lewis. ’ on it was endorsed ‘ memorandum that 386600 pounds of tobacco is allowed for the sterling money paid by mr Ross to Pleasants, Shore, and company, and that neither interest nor commission are reckoned in the within valuation. Geo. Carrington, John Coles.’ whereby the valuers appear to have discounted, at the rate of one hundred pounds for every ten shillings sterling, the tobacco supposed by them to have been paid by David Ross to Pleasants, Shore, and company m Paschalls bond, and the bills of exchange mentioned in the receipt of Thomas Pleasants, although, by the terms of that receipt, they were to be settled in tobacco at one hundred pounds for every twenty shillings sterling, they also gave David Ross credit against William Anderson for 26055 pounds of tobacco, a difference by them supposed between the value of 60994 pounds of tobacco, atthe time when they were paid in may and june 1780, and the value in april following, when the lands were valued, but two of the referees in their examinations deposed, one, that, unless he had conceived himself authorised to settle the tobacco and money paid by David Ross, by the same scale as that by which he valued the land, he would not have valued it, or not in the manner he then did ; and the other, that, if he had been prevented from adjusting the payments on the scale by which he valued the lands, he would either have valued the lands in another manner, so as to have been conformable to the payments, or not have acted at all in the business.
*14 On the 28 day of April, 1781, David Ross sent notes for a quantity, about 174300 pounds of tobacco, to William Anderson,' to be tendered to him, as well on his own, as on Pleasants, Shore, and company’s, account, and in a letter by the same bearer, after explaining his reasons for making a tender, in the circumstances of the country at that time, when the british army, among other instances of the havock by which their progress might be traced, had burned one of the public tobacco-warehouses, proposed another mode of payment,-if the tobacco sent should not be acceptable.
Neither of these was approved of by William Anderson, who,at the meeting oí the referees, had excepted to, and in a manner protested against their doing more than-valuing the land in tobacco, the only matter submitted to them; and Pleasants,Shore, and company, as well as he, relying upon this exception, moreover insisted, that the referees, when they undertook unwarrantably to adjust the accounts between the parties,- not only gave David Ross improper credits, that is, for Pleasants,Shore, and company’s bond to Thomas Paschall, and- the bills of exchange drawn on Walter Chambre, but, if they had been proper credits, allowed too much for them by one half:- and William Anderson complained, of their increasing the1 payments made to him and consequently lessening the value of hi's- sh-are.-
The parties being thus at variance, in September, 1782,- actions of debt upon the obligations of David Ross, were commenced in the general court, by Pleasants, Shore and company,- and William Anderson, in which actions, the declarations, after reciting the agreements and stating the valuation, assigned the-breaches of the agreements in non-payment of the half, in one-case, and of the fourth, part in the other case, of the 959205' pounds of tobacco to which the lands were valued, with the; commission and interest.
On trial of issues, made up on the pleas of conditions performed, with leave to give any matter in evidence, the jury? charged in both together found that David Ross had not performed the agreements, and that from him were due to Pleasants-,Shore and company, 339890|, and to William Anderson IT93701 pounds of tobacco, whereby the jury, although they allowed the plaintiff to discount the articles for which the referees gave him credits, appeared to have differed from those gentlemen in the quantity of the credits, probably accounting every twenty shillings sterling of the debt to Thomas Paschall and of the money for which the bills of exchange on Waites Ghamble were drawn equal to one hundred pounds of tobacco, deducting 26055 pounds of tobacco added to the payments made by David Ross to William Anderson in may and june 1780 : and after *15 inotions for new trials, which were rejected, judgments were entered for the penalties of the obligations, to be discharged by payment of the tobacco so found due by the verdicts respectively.
For an injunction to stay execution of these judgments, and for relief against them, so far as the tobacco recovered thereby bright appear to excede what Was justly due, David Ross filed his bill in the high court of chancery ; and an injunction was awarded until further order, according to the usual course of the court, chiefly upon these grounds stated in the bill: that the referees had informed David Ross, they valued the lands so highly, expecting the tobacco would be demanded and paid in a short time, which they were led to expect from William Anderson’s declarations that the tobacco was immediately wanted, and the professed readiness of David Ross to make the payments : and that the defendents, if they Would not abide by every part of what was done by the referees, ought not to have the benefit of one part, that is, of the high valuation made by them, which Would not have been made but upon a supposition that the parties would acquiesce in the whole.
Upon filing the answers, supposed to have denied the equity of the bill, a motion was made to dissolve the injunction ; but the court inclining to dissolve it in part only at that time, the defendents council consented that the matter should rest as it was, until the final hearing, which was appointed to be at the then next term.
At the hearing, which did not come on before the 13 day of may, 1788, this opinion and the decree following it were entered :
‘ It appears to the court that the valuers of the land bought by the complainant of the defendents, having Valued the same in tobacco, when that commodity was in their opinion worth only ten shillings sterling per hundred weight, upon a supposition that they Were at liberty to estimate upon the same standard the payments, Which had been previously made in tobacco of greater value, and it appearing by their depositions, taken in this cause that if they had conceived differently, they would •either have not valued the land at all, or would have adopted some other measure of its value, which supposition appears not to have been admitted on the trials at law, where their valuation was taken simply, and without connexion with the antecedent payments as not being within the submission to them : and therefore that the valuation thus made can not be considered as a just and equal basis to the judgments which were founded thereon in a court at law : therefore it is decreed and ordered, that the said former valuation be set aside, and it is referred *16 to William Cabell, John Minor, Reuben Lindsay, Joseph Carrington, and Charles Irving, gentlemen, or any three of them, to view and value in tobacco the land purchased by the complainant, as aforesaid, from the deiendents, as the same was in their opinion worth at the time of the contract made between the parties, to wit, on the eighteenth day of february, one thousand seven hundred and eighty, without regard to any payments, and make report to the court in order to a final decree, and it is further ordered that the injunction granted against the judgment obtained by the deiendents, Pleasants, Shore, and company, be dissolved, as to one hundred thousand and thirty one pounds of tobacco, with interest from the 18 day of june, one thousand seven hundred and eighty two, and against the judgement obtained by the defendent Anderson, as to ninety seven thousand eight hundred and two pounds of tobacco, with interest also from the twenty seventh day of june, one thousand seven hundred and eighty three, and the costs at law in each suit.’
One of the court, which was composed of three- judges at that time, dissented from so much of this decree as appointed other valuers, for the reason stated in the next opinion and decree by himself, when, in consequence of an act of the general ■assembly, he remained sole judge.
Four of the valuers last appointed reported their opinion to be, that the land purchased by the plaintiff of the- deiendentswas worth 609600 pounds weight of tobacco of Pages, Richmond, Manchester, and Petersburg inspections, the eighteenth day of February, 1780.
On the 2 day of june, 1789, the cause was again heard, and the court rejecting this report, because so much of the order as appointed another valuation of the land by different men, without consent of parties, was supposed upon revision not to be- authoritative and, if what followed were right, to be unnecessary, -delivered an opinion to this purpose ; that the former valuation, now re-instated, is a proper foundation for a just and equitable decision, if it be so understood and interpreted as to correspond with the intention of those who made it, which intention is ex-planed by themselves to be this : to declare that the land with the improvements was worth 959205 pounds of tobacco at the time of making the estimate, when 100 pounds of tobacco were supposed by them to be equal to ten shillings sterling, according to whieh ratio the value in tobacco was announced, from an expectation caused by declarations of the defendent William Anderson that payment of so much of the consideration as remained due would be exacted before the price of tobacco would alter : and therefore the opinion of the court is, that 47961. Os. *17 6d. sterling ought to he considered as the trae value of the land and improvements at all times, not variable by changes in the price of tobacco, they who were appointed by the parties to make the valuation having confessedly referred to sterling money, compared with tobacco, as the balance by whieh they adjusted the value of the latter, and having conformably thereto augmented the quantity of proceding tobacco credits whieh they allowed to the plaintiff, and having unwarrantably made the valuation according to the price at that time, instead of the price at the time of the contract, or at the time limited by it for payment of the consideration, but the court is of opinion that the plaintiff is not entitled to credits against the defendents Pleasants, Shore, and company for the bills of exchange payable to them drawn by him on Walter Ohambre, because the bills were not applied to their use, but were negotiated by the agents of the plaintiff, nor for the money due by their bond to Thomas Paschall, because before the assignment of that bond to the plaintiff the payment of that debt had been assumed by Ross, Shore, and company, for value received by them, of which assumption the plaintiff, a member of the last named company also, either had notice, or was obliged at his peril to take notice, the court therefore decreed, that, upon the payment by the plaintiff to the defendents Pleasants, Shore and company of one •half, and to the defendent William Anderson of one fourth part, of the said 4796 1. Os. 6d. sterling, with the addition of five per centum commission thereon, to be reduced into current money of Virginia, at the rate of thirty five per centum difference of exchange, and also their proportions of the value of the black •cattle sold by them to the plaintiff, with interest upon the said ■several proportions, from the first day of may, 1780, after deducting the payments made by the plaintiff as well before as since the judgements, the injunction obtained by the plaintiff be perpetual. of which payments an account was directed to be made up.
From this decree, except as to taking the account, the defendants appealed ; and here follow the
Opinion and decree of the court of appeals :
‘ That there is error, as well in the said decree (that is, the decree of 2 day of june, 1789) as in that of the thirtieth of may, 1788, therefore it is decreed and ordered, that the said decrees be reversed and annulled, and that the appellee pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here, and this court proceeding to make such *18 decree as the said high court of chancery should have pronounced, doth declare, that, the parties having chosen certain persons to value the land purchased, none others could without their mutual consent he substituted to perform the same ; that the power delegated io those persons was merely to value the land, and not to adjust accounts, or settle any other disputes between the parties ; that no time being fixed for the valuation to be made, or to which it should refer, in case of a fluctuation in the price of land or tobacco, it ought to be governed by circumstances at the time of making the valuation, and not at the time of the contract; and no objection arises from the situation of the country at the time of proceeding to the work, since it was then done by the mutual consent of parties, who equally Tisqued a change from subsequent accidents ; that what the valuers did in adjusting the accounts between the parties, was not only void as exceeding their powers, but improper in the exer- . cise of what they assumed, in their allowing a credit to mr 'Ross, against Pleasants, Shore, and company of 386,685 pounds of tobacco, for 19331. 8s. 7d. sterling, for bills of exchange' never applied to their use, and for a debt due from them to Pas- • chalí, for which they had already made an appropriation of money due to them from Ross, Shore, and company by mutual! consent, and in their allowance of a credit to the- said Ross against William Anderson for 26055 pounds of tobacco, for a supposed difference between the value of 60994 pounds of' tobacco paid in may and june 1780, at that time,, and the value at the time of the valuation, there b.eing neither law nor custom to warrant the scaling of a tobacco payment made in discharge of a tobacco debt; that what the arbitrators so did beyond their1 powers, being void and set aside, it would follow that the valuation should stand as an independent act pursuant to the power delegated, but since it appears that the valuers in estimatingthe sterling value of the land in tobacco, combined the idea of the adjustment they made of the accounts, without, which they declare they would not have so estimated the price of tobacco, it is inequitable that the said estimated price of tobacco should bind the parties ; that therefore the sterling value of the land then fixed by them, independent of the other circumstances, ought to stand as the basis of its value r and there being no precedent of a court of equitys decreeing a payment in money of any kind, in discharge of a specific contract, where the thing covenanted for may be had, that the sterling money ought to be turned into tobacco at what was the current price of that commodity at the time of the valuation, which being a simple1 fact, independent of the value of the land,may and ought tobe *19 settled by a jury, therefore it is decreed and ordered that the second valuation of the land be set aside, and so much of the first valuation as fixes the value of the land in tobacco, but that 4796 1. Os. 6d. sterling shall stand as the value of the land in that money ; that an issue be directed by the court of chancery to try what was the current and average price in sterling money on the 18th day of april, 1781, of tobacco, passed at the inspections of Page’s, Richmond, Manchester, and Petersburg ; which, being tried and certified to the satisfaction of the said court of chancery, shall be the rule by which the said sterling shall be turned into tobacco, and five per centum being added thereto for profit according to the contract, shall be made the ground of the debit to the said Ross as well by the company as the said Anderson, to hear interest from the 1 may, 1780, and the accounts of interest and payments to be adjusted between the parties by order of the said court and a final decree made for the balance in tobacco, discarding from such payments the 1933 1. 8s. 7d. sterling, and the estimated value thereof in tobacco, as well that made by the first valuers, as by the jury in the trial at law; leaving that article to be settled between the two companies ; disallowing also any claim on either side for a supposed difference in the price in any tobacco payment, as being more or less than the price to be fixed by the jury as aforesaid, and on payment of the balances due the injunction to the judgement at law to he made perpetual.’
A commentary upon this opinion and decree.
There is error in the said decree, that is, the decree of the 2 day of june, 1789,] that decree surely was not erroneous intirely, although it was reversed intirely ; for m several parts it agreeth with the decree of the court of appeals, and the latter in the most important part wherein they differ will perhaps be found to differ with itself.
The parties having chosen certain persons to value the land purchased, none others could, without their mutual consent, be substituted to perform the same.] upon this principle the second decree set aside the valuation made pursuant to the first decree. but from this principle the court of appeals are supposed to have deviated in a subsequent part of their decree.
The power delegated to those persons was merely to value the land, and not to adjust accounts, or settle any other disputes, between the parties.] one of the reversed decrees set aside every thing which those persons did, and the other approved nothing more of what they did than that part which the correcting decree established, namely, the valuation of the land in sterling money.
*20 No time being fixed for the valuation to he made, or to which it should refer, in case of a fluctuation in the price of land rr tobacco, it ought to be governed by circumstances- at the time of making the valuation, and not at the time of the contract; and no objection arises from the situation of the country at the time of proceeding to the work, since it uias then done by the mutual consent of parties, who equally risqued a- change from subsequent accidents.] in a barter the parties contemplate the values of the things which are the subjects of it, compared with some third subject for which they are more usually exchanged, in this case, where land was bartered for tobacco,, the persons appointed by the parties to value the land in tobacco compared the values of both land and tobacco with sterling money, and declared the value of so much tobacco to be- equal to the value of the land, because those articles, being each equal to the same quantity of sterling money, are equal to one another.
The value of all things vary at different times ; but their variations are not isochronous, the values of land and the precious metals are generally less variable than the values of annual fruits of the earth, these fluctuating by accidents to which the others are not liable, time therefore is considerable in every case where value of the things exchanged is the subject of enquiry ; and more considerable where annual fruits of the earth are ope of the things exchanged, that the valuation- ought to relate to some time being admitted, the time which was in contemplation of the parties is supposed to be the time to which the valuation ought to relate, because that it should so relate is believed to be undeniable, this must be either the time of contract, or the time of payment, or the time of valuation, the second most probably was in contemplation of the parties, because one of them had bound himself to pay, and the other were intitled to receive, the tobacco, at that time : this was the 1 day of may, 1780, for from that day, if the tobacco were not paid before, the purchaser had agreed to pay interest, and that to this time should be preferred the third, that is the time of valuation, to assign a good reason is thought impossible.
The court of appeals say, at the time of proceeding to the work, it was done by mutual consent of parties, who equally risqued a change from subsequent accidents, but, first, the parties mutually consented that the time of valuation should be regarded, not because it was in itself considerable, but because one of them pretended, and as appeared afterwards only pretended, that he would receive the tobacco immediately, and the other expected that it would be demanded immediately ; this is manifested by the act of the referees, who allowed the purchaser to set off for the tobacco paid before the valuation more than *21 the numerical quantity, intending thereby to countervale the difference in prices at one time and the other, if David Ross, in may and june, 1780, had advanced to the sellers 672101 pounds of tobacco, the referees would have declared that quantity of tobacco to be the value of the land, for by them 60994 pounds of tobacco, paid in may and june, 1780, were equal to 87049, the 18 day of april, 1781 ; and 60994 t 26055=87049 : 959205 :: 60994 : 672101 nearly, now let us suppose David Ross, before the referees, to have alleged himself to bo a credit- or of the other party fo' 672101 pounds of tobacco, paid in may and june before, and William Anderson to have objected, that to value the lands was the only matter submitted to the referees, not to adjust their accounts ; and let us suppose the referees nevertheless, to have reported their estimate in this form : ‘after viewing the lands, and taking other information for our direction, and maturely and deliberately considering the subject matter of dispute between the parties, wo do value the said lands at 959205 pounds of tobacco, if the whole price agreed to be paid be now due ; but David Ross alledging that, towards discharging the price, he had, in may and june last, paid 672101 pounds of tobacco ; if that allegation be true, we do value the lands to no more than 6721.01 pounds of tobacco, because that quantity, paid in those two mouths, was eqrral in value to 959205 pounds of tobacco, to be paid now:’ and let us also suppose them to have subjoined what followeth : ‘and, according to that ratio, if, upon a settlement of accounts between the parties, the tobacco paid by David Ross in may and june, 1780, appear to be less than 672101 pounds, we reduce our estimate, or, which is the same thing, the sum of the payments, encreased in that ratio, shall be set off against the estimate ; for example : if the sum of the payments to William Anderson in may and june, 1780, be 60994 pounds of tobacco, which he admitteth it to have been, then it shall set off 87049 pounds of tobacco against his proportion of the 959205 pounds of tobacco ; tor 672101: 60994:: 959205 : 87049; would the court of appeals have disapproved and set aside the estimate, because it related to the tunes of the payments ? the commentator believes that they would not have set it aside, for that reason, if they could properly have discussed the question, and if they would not, their direction in the principal case that the jury in the estimate to be made by them should refer to the 18 day of april, 1781, instead of the times of payment, seems equally ill founded, and, secondly, at the time of valuation in april, 1781, William Anderson, being only an agent for Pleasants, Shore and company, was not authorized, as he pertinaciously urged before the referees, to make a new *22 agreement for his constituents, and he made no new agreement for himself, to risque a change in the values of land and tobacco from subsequent accidents.
What the valuers did in adjusting the accounts. between the parties was, not only void in exceeding their powers, but improper in the exercise of what they assumed in their allowing credits tó mr. Ross, fc.] for the same reasons these credits are disallowed by the reversed decrees.
Neither law nor custom to warrant the scaling of a tobacco payment made in discharge of a tobacco debt.~\ the payment, to which here is an allusion, not being scaled otherwise than by debiting the receiver with the true value in money of the tobacco paid, in discharge of a money debt, by the second reversed decree, this part of the correcting decree ministereth occasion to enquire, whether the debt in this case, which is confessed to have been originally a tobacco debt, after what hath happened, remained a tobacco debt?
Men chosen by sellers and purchaser to value land, sold in tobacco passed in 1779 and 1780, at the upper inspections on James and York rivers, first make the estimate in sterling money, and then compute how much tobacco, of those ages and. inspections, is equal to that money, but perform the business in such a manner that the court of appeals annihilate the part relative to the conversion of the money into the tobacco, establishing the other part of the referees act, that is, the valuation in money.
When the conversion of money into the tobacco was annihilated, either no tobacco debt existed, more than a tobacco debt would have existed if the referees had not uttered or written one word about tobacco, or, if any tobacco debt did then exist, it must have been an incertain tobacco debt, to be reduced to certainty by the same referees in another valuation ; for a debt is a contract, a contract derives its obligation from consent of parties ; and the parties never consented to be bound that one should pay and the other receive the tobacco which any men, except those referees, should declare to be the value of the land sold, then after the valution in tobacco was set aside, either no debt existing, or, if any debt existed, it being a money debt, if it be since a tobacco debt, its transubstantiation, unless it be a mystery, must be wrought by the court of appeals, who directed the value of the money in tobacco to be determined by a jury ; by what law or custom warranted is not easy to discover.
But if this be á tobacco debt, the prices of that commodity having varied so, that 100 pounds of it appear to have been agreed by the parties to be equal to 20 shillings sterling at the *23 time of contract, and to have been thought by the referees less by nearly one third two or three months afterwards, and less by one half at the time of valuation; the court of appeals, prescribing the rule by which the conversion of the sterling money into the tobacco should be directed, namely the current and average price of tobacco in sterling money on the 18 day of april, 1781, that is, the time of valuation, manifestly scale a tobacco debt, now, when a tobacco debt is scaled, that either law or custom forbids the scaling of a tobacco payment made in discharge of that scaled tobacco debt some men will not admit to be .sufficiently proved by a simple dictum.
What the arbitrators so did beyond their powers being void and set aside, it would follow, that the valuation should stand as an independent act pursuant to the power delegated, but since it appears that the valuers in estimating the sterling value of the land in tobacco combined the idea of the adjustment they made of the accounts, without which they declare they would not have so estimated the price of tobacco, it is inequitable that the said estimated price of tobacco should bind the parties.] between this paragraph and any sentiment in the reversed decree no discrepancy appeareth.
Therefore the sterling value of the land then fixed by them, independent of the other circumstances, ought to stand as the basis of its value.] the difference between the second erroneous decree and its corrector is, by one the 4.796 1. Os. 6d. sterling, which the referees declared the land to be worth, ought to be considered as its true value, by the other the same sterling money ought to stand as the base of its value, upon which another fabric, that is, a second valuation of the money in tobacco, not by the referees, hut by a jury, is to be constructed.
And there being m precedent of a court of equitys decreeing a payment in money, of any kind, in discharge of a specific contract, where the thing covenanted for may be had,; that the sterling money ought to be turned into tobacco at what toas the price of that commodity at the time of the valuation, which being a simple fact, independent of the value of the land, may and ought to be settled by a jury.] when a case like this shall be shewn, perhaps a precedent for the reversed decree may be shewn, the specific contract here was that a buyer should pay to the sellers the tobacco to which men chosen by those parties should value the land sold, the ehosen men do value the land in tobacco. the court of appeals, saying to bind the parties by that valuation would be not equitable, set it aside, and decree that the purchaser pay to the sellers, not the tobacco to which the men chosen by the parties value the land, but the tobacco to *24 which men not chosen by the parties, namely, a jury, should value the land, for to value in tobacco 4796 1. Os. 6d. sterling money is to value in tobacco the land, agreed to be equal in value to so much sterling money : that is, the parties having chosen certain persons to value the land purchased ; others, without their mutual consent, were substituted to perform the same, is this consistent with the principle which is the basis of the reversing decree, stated in these terms, the parties having chosen certain persons to value the land purchased, none others could, without their mutual consent, be substituted to perform the same, trial of a fact by a jury is undoubtedly regular and constitutional ; when the fact is put in issue by the parties, in the ordinary mode; but when the parties have referred the matter to men chosen by themselves,instead of a jury, for substituting a jury instead of those men to perform the whole business or part of it the only precedent perhaps is the reversing decree, and that the precedent is a good precedent in this case may be doubted ; for by the second decree justice was certainly done to the parties, if 4796 1. Os. 6d. were the value of the land in sterling money, which doth not appear to have been disputed : but that justice would be done by the reversing decree, which supposing parties to have been speculating on the risque of change in the value of land and tobacco from accidents, directed the money to be converted into that commodity, by a jury, and to be converted into that commodity, according to its value in april, 178 L, when it was less by nearly one third, than it had been during a long period before, and less, in perhaps a greater proportion, than it was soon afterwards, and than it hath been ever since, and directed the tobacco, which according to the agreements, must have been inspected in 1779, or 1780, to be paid to the sellers, that justice would be done by such a decree, is believed to be incertain.
Therefore it is decreed that Sfc. and that an issue be directed to try what was the current and average price in sterling money, mb-the 18 day of april, 1781, of tobacco at the inspections of Pages, Richmond, Manchester, and Petersburg, which shall be the rule by which the sterling >hall be turned into tobacco.] that no tobacco of those inspections was sold for sterling money on the 18 day of .april, 1781, or for several days before or after, in a bill hereafter mentioned William Anderson stated to be true ; and the contrary did not appear, then what could a jury have found to be the current and average price? if a jury had been charged, and had found, that no tobacco, of those inspections, had been sold on the 18 day of april, 1781, or for several days before or after, so that they could not say what was the current *25 and average price of tobacco at that time, the court of chancery-ought not to have awarded a new trial, because the jury would have found the truth confessedly ; nor could the court of chancery have varied the issue, because by law its decree must have been formed after the prototype thereof, which was the decree of the court of appeals ; nor hath any mode been yet discovered, by which that court can vaiy one of its own decrees : if so, must not the cause, which could not have a motion progressive or retrogade, have remained stationary? whosoever can shew what else would be done with it

-erit mihi magnus Apollo.

According to the decree of the court of appeals, an issue was directed by the high court of chancery, the parties waving that mode of trial referred the question intended to be tried by a jury to the' determination of five merchants, who made their report, the defendent William Anderson moved that the report should be set aside, filing a bill for that purpose, with certain exhibits and affidavits, the court refused to set aside the report, seeing no cause to be dissatisfied therewith, and, being of opinion the parties were bound by the act of the referees, made a decree according to what the court of appeals prescribed, except that the curent and average price of the tobacco reported by the merchants, instead of being found by a jury, was the rule by which the money was turned into that commodity ; and this last decree, from which William Anderson appealed, was affirmed.
PINAL DECREE upon the report.
The court, on the day of march, in the year of our lord one thousand seven hundred and ninety five, took into consideration the report of commissioners, made pursuant to the order, of the seventeenth day of may, in the year one thousand seven hundred and ninety three, with the exceptions thereunto. on which the result of the courts deliberation followeth.
The doctrine, that a purchaser of land may not, against his obligation, for payment of the price, discount money appearing due to him by the vendors assigned obligation, as well as money appearing due to him from the vendor, by his own immediate contract, the assignees equitable right to the money having always existed, and his legal right to it having existed continually since he hath been permitted to maintain an action in his own name on the obligation, which permission was anterior to this transaction, is repugnant to the principles of justice, as *26 well as to the words of the statute, passed in the year one thousand -'seven hundred and forty eight, chap. 27. sect. 6. of the edit. 1769, ‘when any suit shall be commenced and prosecuted in any court for any debt due by judgement bond bill or otherwise the (a) defendent shall have liberty to make all the discount •he can-, and upon proof thereof the same shall be allowed.’ the defendents, therefore, in the introduction to their exceptions, stating such a doctrine to have been authorized by a decision of the court of appeals, are believed to have misunderstr od that decision, but although the plaintiff is inti tied to a credit, in account with the defendents Pleasants, Shore and company, for the three hundred and sixty pounds paid, with interest, to William Macon, in discharge of the obligations of those defendents, assigned to the plaintiff, and might have discounted so much against a money debt, this credit cannot be discounted against the defendents tobacco debt, because the comparative values of the two subjects are not ascertainable by any data to be discovered from the exhibits, some agreement between the parties is supposed to have appeared to the commissioners, authorizing them to set off the other -articles, for which credits are allowed to the plaintiff in the same account with the defendents Pleasants, Shore and company, and which are also money articles, against the tobacco debt, such an agreement is supposed to have existed, because no exception appeareth to the allowance of the last mentioned articles, otherwise those artificies ought not to have been entered in that account at all; and the decree ought to have been that the injunction be dissolved, as to two hundred and eighty eight thousand pounds of the tobacco recovered by the judgement of Pleasants, Shore and company, with interest; and be perpetual for the residue ; and that those defendents pay to the plaintiff the said money credits, with interest, the latter part of which decree would not have been inconsistent, as is conceived, with the decree, pronounced by the court of appeals in this cause, the eighth day of december, in the year 1790. for that court is believed not to have intended by their decree to leave one party, exasperated perhaps by frequent altercation during a long course of litigation, and thereby become averse from conciliatory modes of adjustment, at liberty to indulge a vindictive spirit, and with an execution make havock of the other partys estate, who was, at the same time, a creditor of his persecutors on another account, without enabling him to shield himself from their oppression partly by his just credits.
*27 The court would have allowed to the plaintiff credit for the obligation of the defendents payable to Tnomas Paschall, and assigned to the plaintiff, but is of opinion he is not intitled to that credit in this case, for reasons explaned in the decree of this court, of the second day of june, in the year one thousand seven hundred and eighty nine, namely, ‘before assignment of that obligation to the plaintiff, payment of the debt due thereby had been assumed by Ross, Shore and company, for value received by them,’ and therefore the plaintiff, who,being a member of that house, either had notice, or was obliged at his peril to take notice, of the assumption, must be a creditor with them, who had agreed to discharge the defendents from it, for so much of the money due by this obligation as, upon a settlement of accounts between those two houses, shall remain due from the defendents to the other house.
For the one thousand and fifty six pounds eleven shillings and eleven pence which had been due from the defendents to Isaac Gouverneur, a credit is not properly clamed in this case by the plaintiff, who allegeth himself to have paid the money : because, for satisfaction of this debt, the property of Ross, Shore and company had been attached, in the island of Sainthomas, and whosoever, by discharging the demand, redeemed their property, became a creditor in account with them, who must resort to the defendents for reimbursement, and therefore this article is a proper subject of examination in adjusting the accounts between those parties.
The mode of adjusting interest, approved by two of the commissioners in opposition to the third, in the accounts stated by them, annexed to the report, whereby they allow to the debitor interest upon the whole of the payments by him, is erroneous, the error may be developed thus : the debitor, allowed interest upon his payments, profiteth doubly by so much as countervaleth interest of the debt; once, by extinction of that interest, and then by being credited with interest upon the whole payment, including that part which extinguished the interest of the debt, and to which that extinction was equivalent; whilst the creditor receiveth his interest simply, and consequently so much less than he ought to receive as is equal to interest on that part of the payment, which extinguished his own interest.
This may be exemplified in the two accounts subjoined, where one thousand pounds are stated to have been due from D to C, and payments to have been made at the times therein mentioned ; in one, interest on the payments being credited only, and in the other interest being charged on that part of the interest which was extinguished by the payments :

*28

here the creditor appeareth to have received 8 shillings more than the interest charged, but that these eight shillings are equal to the interest upon those parts of the payments which extinguish interest is thus shewn :

here this method of stating an interest account, if the principle thereof were right, would be corrected, the benefits to both parties, of whom one would receive interest simply, and the other be discharged from interest simply, being reciprocal.
A mode of adjusting interest, indubitably less exceptionable than that whereof the error hath been developed, because differing from it only in being free from that error, is the mode by which a debitor, for a partial payment, is allowed a credit against so much of the principal debt as is equal to the remainder of the payment, after a deduction therefrom of its interest; according to which the credits of the plaintiff would stand thus, in the account with Pleasants, Shore and company :

*29

This mode of proportioning interest, in an account after had been some time considered, seemed to the court unoxcep *30 tionable. for that 0, to whom D, by one obligation, had been bound to pay 1000 pounds, with interest, was intitled to the same interest to which he would have been intitled, if D had been, by several obligations, bound to pay the 1000 pounds, divided into several parts ; and, by parity of reason, intitled to the same interest to which he would have been intitled, if D and several other men had been bound, every one by a separate obligation, to pay part of the 1000 pounds, was a position conceived to be undeniable, and therefore taken for a postulatum.
Example : D, bound by one obligation, to pay C 1000 pounds, on or before the 31 day of December, 1793, paying, on the

would have paid all the interest as well as all the principal to which G was intitled ; in like manner as
D, bound to pay to O, on or before the 31 day of december, 1794, by every one of five obligations, 200 pounds, by those payments would have discharged the interest, as well as the principals, to which C was intitled ; or in like manner as D, E, F, G, and H, who had been bound, every one by a separate obligation, to pay 200 pounds to G, on or before the 31 day of december, 1793, making similar payments respectively, would have discharged the interest, as well as principals, to which O was intitled.
Hence, the court, in such cases as this, was inclined to observe the following
RULE
To place the value of a partial payment, after a defalcation of five per centum discount therefrom, to the credit of the debitor against the capital debt, so that upon the remainder of the capital the current of interest should not be interrupted.
This value, after the discount allowed, may be discovered by the following theorem ; (b) if we put the rate per centum, or the interest of one hundred pounds for one year, — r ; the months weeks or days in one year=t; the months weeks or days which any sum, a, is withheld ’by the debitor=n ; the amount of that sum, in the said time, viz. principal and interested) :
*31 Then it will be as t, the time in which the interest of 100 pounds is produced, is to n, the time of retention, so is the interest in the former of those times, to ^t, that in the latter, which added to a, the principal, gives a * ^()t=b, the whole amount.
Example : what credits ought the plaintiff to have for his partial payments 26184 <fcc. pounds of tobacco, paid 16 day of december, 1783, &c. against the capital debt 288226 pounds of tobacco, due and bearing interest from 1 day of may, 1780?
Here r being = 5, t — 365, n = 1324 &c. and b = 26184 <fcc. we have

the plaintifFs credits in the account with the defendents Pleas-ants, Shore and company ; and a=jño^fox5— áyy4, &c. m account with the defendent William Anderson.
But the court, upon a revision of the subject, doth now condemn the rule formed in consequence of the position lately stated, (c) perceiving the comparison of the case therein supposed , where D and several others were bound by separate obligations, with the case, where D was bound, by one obligation, or by several obligations, to be inept, and, in this case, the inference not to be deducible from the position, because the inference alloweth a debtor, on several accounts, to arrogate a right, which he hath not; namely, a right to direct a payment, at any time after it had been made, to be placed to his credit in any one of the accounts, although, by law, his election, which is acknowledged once to have existed, to assign the station of the credit, must be previous to the payment, or simultaneous with it, and accordingly must be explained to the receiver : for if the payment be tacit, the election, which the debitor had before, devolveth upon the creditor afterwards, in the case supposed in the position, when D paid 202 1. on the 14 day of march, 204 1. on the 26 day of may <fcc, he had a right to direct the application of the payments; but if the right were not exercised *32 at the times of payment or before, C, afterwards, had the right to apply the payments first to discharge the interest which he might then lawfully receive : that he might lawfully receive interest on the whole 1000 pounds, at the time oí the first payment, will be shewn hereafter ; and consequently the position doth not warrant the inference.
This doctrine of elections is not an arbitrary but a rational doctrine, and seemeth founded on these principles: whilst a man retaineth the money whereof he had fairly acquired the possession, it is his ; he may squander it, melt it in a crucible, sink it in the ocean ; in a word may do what he will with it. therefore if he deliver the money to another, even to a creditor, with instructions to apply it in this or that manner, the possession of the receiver is fiduciary, and he is bound to make the prescribed application, in so much, that if A, indebted to B and C, deliver money to B, to be paid to C, it is the property of O, and he may recover it from B. on the contrary, when a debitor delivereth money to his creditor, without instruction to apply it to his credit on this or that account, the property is immediately changed to the receiver ; it is his ; he may do what he will with it, and consequently may place it to the other partys, credit in any account between them, the law, if it were otherwise, would be inequitably beneficial to the debitor and detrimental to the creditor in many instances, and among them in that which is the subject of this disquisition, where a debitor, whilst he is enjoying a revenue from ail estate, bought with money borrowed, or, which is the same thing, with tobacco, for which he bound himself to pay interest, would gradualy diminish, as he eould conveniently diminish, the capital debt, which is a fund fruitfull of interest, and render the accumulated interest, from which witholding it he likewise deriveth a profit, a fund utterly barren, whilst it is witheld, to the creditor, so that to the latter here concur damnum, emergens and lucrum «cessans.
The court, therefore, to the first and second modes of adjusting interest upon which the foregoing strictures have been made, doth prefer the mode observed in this case by master commissioner Dunscomb ; whereby so much of the payments as is equal to the interest being applied to the discharge thereof, the remainder unless the debitor at the time of payment or before directed otherwise, is applied towards discharging the principal debt, or, from the sum of principal and interest upon it compu7 ted to the time of payment, the payment is subtracted, and upon the remainder of the principal debt, as a new capital, interest is computed from the time of payment, but with this cau *33 lion that the new capital be not more than the former capital; so that if the payment be less than the interest due at the time ■of payment, the surplus of interest due must not augment the -foeneratmg capital, because thereby the creditor would receive compound interest, or interest upon interest, which is generaly ■supposed to be unlawfull. (d) to the mode now recommended *34 its illegality, in a case where the payment hath been made before the end cf a year from the term when the interest commenced, hath been objected, but the objection is founded in a misinterpretation of the act to restrain the- taking- of excessive usury, the words of which (acts ofl748, cap. 30, edit. 1769, sect. 2.) are ‘ no person shall take above the* 1 **value of five pounds for the forbearance of ONE HUNDRED pounds fór a YEAR, and so AFTER THAT RATE Mr a greater or lesser sum, or for a longer or SHORTER TIME,’ mid which do not prohibit *35 him, who had lent 7300 pounds, to take every day one pound for interest, more than they prohibit him to take, at the end of the year, 365 pounds ; the law not requiring a year, more than a day, to mature the lenders right to that interest, which is in the compound ratio of the capttal and the time it is forborn. although a new bond daily taken by the lender for the daily interest perhaps would he deemed an usurious shift condemned by the third section of that act. interest taken or secured for a less time than a day would undoubtedly be criminal; fractions of a day, in legal supputations of time, which are generally rejected, being in no instance more exceptionable than in deal *36 ings between a griping usurer and a needy borrower, (e) a judgment in an action of debt on an obligation awards interest until payment, whether before or after expiration of the' year : which would not be awarded if the receipt of interest computed upon the whole debt unto the time of payment were unlawful!, unless with that payment the period of a year coincided’.- that a creditor without the sentence of a judge, may lawfully receive that which the judge, the lex loquens, (a prosopopoeia confessed universaly to be proper,) would award to him, is assumed for a true proposition, the creditor, who receives his interest half yearly, quarterly, monthly, weekly or daily, although he hath indeed a profit greater than he who doth not receive his interest before the years end, is not culpable, more than the landlord, who receives his rent half yearly or quarterly, the hireling, who receives his wages monthly of weekly, and the like, is culpable.
Upon the whole matter, the- court, allowing to the plaintiff a credit for the money paid by him.' to1 William Macon, instead of discounting the value thereof in tobacco, and having reformed the statement of interest in the account' of the plaintiff with Pleasants, Shore and company, annexed’to the report, so- that it may correspond with the foregoing opinion, as followeth :
David Ross with Pleasants, Shore and company.
statement of interest upon payments to the 6 day of june 1789. 1780, 1 day of may, 283265 pounds of tobacco for half the land.

*37

doth adjudge order and decree that the injunction obtained by the plaintiff to stay execution of the judgement recovered against hirn by the last named defendents on the 27 day of October, in the year 1784, be dissolved as to two hundred and sixteen thousand and ninety one pounds of tobacco, with interest thereupon to be computed from the 6 day of june, in the year 1789, and be perpetual as to the residue of the debt and interest recovered by that judgment, and that those defendents do pay unto the plaintiff three hundred and sixty pounds of current money of Virginia with interest thereupon to be computed from the 18 day of june, in the year 1782. and that the injunction obtained by the plaintiff to stay execution of the judgement against him recovered by the defendent William Anderson on the fore-said twenty seventh day of October, in the year 1784, be perpetual ; and that the defendant William Anderson do pay unto the plaintiff fifteen thousand nine hundred and thirty pounds of tobacco, passed at the public inspections of Pages, Richmond, Manchester and Petersburg, or at some or one cf them, with interest thereupon to be computed from the 11 day of june, in the year 1789 ; and that the parties bear their own costs, in this court, the plaintiff paying one half of the allowance to the commissioner, and the defendants paying the other half thereof.

 A plaintiff claiming a discount undoubtedly shall have like liberty.

 Treatise of algebra by Simpson, Ward &c.

 The rule, nevertheless, would be more righteous than any other, if, upon the interest, compounded, at the end of the year after it began to run, with the principal, interest were allowable.

 Compound interest, that is, interest which ariseth from principal debt, compounded with interest due for the use of that principal, during a certain time, is not prohibited by the statute to restrain the taking of excessive usury, in these terms ; ‘ no •‘person shall upon a contract'take for loan of money &c. above f the value of five pounds for the FORBEARANCE of one ‘ hundred pounds for a year, and so after that rate for a greater £ or lesser sum, or for a longer or shorter time. ’ for interest suffered to remain, after it had become due, in the debitors hands may be said, with no less propriety than principal, to be FOR-BORN. and the demand of compound interest is more reasonable in the case which frequently happeneth, where the debitor withholdeth both principal and interest so long as he can, maugre every effort of the creditor to extort them from him.
Nor is the taking of compound interest generally forbidden by the precepts of conscience.
A capital debt with interest yearly compounded may indeed ’be augmented two fold in 14 years and 75 days; for
SR — the amount of 11. .in one year, viz. principal and interest P=any sum put out at interest. Í n=the number of years for which it is lent j a=its amount in that time.
‘ Therefore, since one pound, put out at interest, in the first •‘ year is increased to R, .it will be as 1 to R, so is R, the sum x forborn the second year, to R2, the amount of one pound in two years ; and therefore as one to R, so is R2 the sum forborn ‘ the third year, to R3, the amount in three years : whence it ‘ appears that R“, or R raised to the power whose exponent is * .the number of years, will be the amount of one pound in those 'c years, but as 1 1. is to its amountR“, so is P to (a) its amount, ‘ in the same time ; whence we have P x R — .a.
‘ From which original equations, others may be derived, by 4 help whereof the various questions, relating to compound in-4 terest, may be resolved.
4 Thus because P Rn is=a, there will come out P~j>> an(^

*34

1 which four theorems, or equations,- serve- for the- Mur cases in c compound interest.’ Simpsons algebra.
Example of the fourth theorem, ih- how long time will 27 pounds be doubled at five per cent.

The logarithm of 54 is 1.7323938, and the log. of 27 is 1.4313638. this being substracted from that, and 3010300,-the remainder, being divided by, 0211893, the log. of 1,05, the-quotient, 14,2066 is=14 years and 75 days
The principal may be trebled in 22 years and 188 days, may" be quadruple in 28 years and 150 days, &c. but a man, who had another way, instead of lending, employed his money, might have made greater profit, without practising the arts of modern archspeculators.
What hath been here said is intended to be applied to the' case where interest compounded with capital had been current a year, for an unconscionable lender might, every month, or week, or day, prevale upon the borrower to execute an obligation, compounding principal and interest, if it were daily executed, how the debt at the end of one year, would be exaggerated may be seen by this problem in W. Emersons treatise of algebra, b. II. sect. II. the principal being supposed to be 100 pounds, and the rate of interest 5 pounds.

*35

 Perhaps interest, accumulated in periods of less duration than a day,, was-in contemplation of Richard Price, when, in the introduction to his observations-on reversionary payments &c. he wrote this note: ‘ a peny, put out to per *37 cent compound interest at our saviour’s birth, would, by this time, have increased to more money than would be contained in 150 millions of globes, each equal lo the earth in magnitude, and all solid gold.’